IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMY MEDLEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF MONTGOMERY | : | NO. 12-1995 |

## MEMORANDUM

**Padova, J.**                                                                                                  **January 25, 2013**

Plaintiff Amy Medley brings this discrimination claim against Defendant County of Montgomery (the "County") under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), maintaining that the County told her that she could take leave pursuant to the FMLA, but then fired her for taking the leave. Presently before the Court is the County's Motion for Summary Judgment. For the reasons that follow, we deny the Motion.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

A.    Factual Background

Plaintiff has a son, Anthony, who has Asperger's Syndrome, developmental delay, and an anxiety disorder. (Def.'s Statement of Material Undisputed Facts ("Def.'s Stmt.") ¶ 11;[1] Pl.'s Ex. C at 2.) Plaintiff's partner, Antoinette, is an adoptive parent of Anthony and shares equally in his care. (Def.'s Stmt. ¶¶ 12-13.) Anthony has grown up with both Plaintiff and Antoinette. (Id. ¶ 24.) In addition, Plaintiff's sister, a stay at home mom, occasionally watches Anthony when Plaintiff and Antoinette are working. (Id. ¶¶ 14-15; Medley Dep. at 24.)

Plaintiff, a nursing assistant, was hired by the County in September 2010 to work at its Parkhouse Providence Pointe facility. (Def.'s Stmt. ¶¶ 2-3, 6, 48.) The County's Absenteeism

---

[1]We cite only to those paragraphs of the County's Statement of Material Undisputed Facts that are admitted in Plaintiff's responsive filing.

Policy requires that an employee who is unable to report for work "for whatever reason," must notify her employer "TWO hours prior to the start of [her] shift." (Id. ¶ 16; Def.'s Ex. I.)[2] The Absenteeism Policy further states that "[e]xceptions will be evaluated on an individual case by case basis, given the proper documentation/verification, of why the employee was unable to notify [her employer] two hours prior to the start of [her] shift." (Def.'s Ex. I.) The Absenteeism Policy further warns that if an employee fails to notify her employer two hours prior to the start of her scheduled shift, "it will be considered an unexcused absence, UNPAID, with 25 points assessed." (Id.) If an employee accumulates fifty points within a twelve month period, she is disciplined by counseling; at seventy five points, she receives a written warning; and at one hundred points the employee will "self terminate." (See Def.'s Ex. H at 42.)

In November 2010, Plaintiff began missing work to care for her son. (Def.'s Stmt. ¶¶ 11, 19.) Theresa Samuels, the Director of Quality Improvement and Staffing, spoke to Plaintiff about her absences and explained the "point system" that the County uses to evaluate its employees' unexcused absences. (Id. ¶¶ 19-21, 61.) Plaintiff was not always assigned points under the Absenteeism Policy when she failed to notify her employer two hours prior to missing work, and a few times the points that she had been assigned were removed after Plaintiff discussed the circumstances of her absence with Samuels. (Id. ¶ 25.) During Plaintiff's employment with the County, Plaintiff also met with Human Resources Manager Marcia Lucas a few times to discuss her absences. (Id. ¶¶ 48, 50.)

---

[2]Defendant's Exhibit I is actually a Memorandum from the Montgomery County Commissioners, memorializing "Resolution 99-C. 492," and is dated September 17, 1999. (Def.'s Ex. I.)

On February 4, 2011, Plaintiff was issued an "Employee Absenteeism and/or Tardiness Report" ("Report"), which indicates that she was allotted fifty points for absences on January 27, 2011, and February 1, 2011.  (Def.'s Ex. H at 42.)  This Report designates Plaintiff's disciplinary action as "counseling."  (Id.)  On March 2, 2011, Plaintiff was issued a second Report, which allotted twenty five additional points for an absence on March 1, 2011, for a total of seventy five points.  (Id. at 43.)  The second Report designates Plaintiff's disciplinary action as a written warning.  (Id.)  The second Report also contains a handwritten note that states: "the nursing attendance policy was reviewed again when Amy's ILOA went into effect but given another copy on 3/5/11.  Extra fringe time has been granted to Amy several times when she has called in after 6:30 a.m."[3]  (Id.)  The section under "Employee Comment" contains a handwritten note that reads: "Spoke with Maria [Lucas] in regards to my sons[']s FMLA, his psychiatrist is updating his form."  (Id.)

A meeting occurred on March 23, 2011, in which Samuels, Lucas, and Plaintiff discussed Plaintiff's absences from work.  (Id. at 44.)  During the meeting, Plaintiff "communicated that her son continues to have concerns with anxiety but is improving."  (Id.)  The meeting was recorded in an "Anecdotal Note,"[4] which was signed by Plaintiff on March 25, 2011, and which indicates that Plaintiff was told that she must provide a note confirming that her son was seen by a physician on each day she calls out, because her unscheduled "call outs" were taken on days adjacent to previously scheduled time off.  (Id.)  The "Anecdotal Note" also states that twenty

---

[3]Lucas explained that ILOA stands for "Intermittent Leave of Absence." (Lucas Dep. at 56.)

[4]An "Anecdotal Note" is the written memorialization of a nursing department meeting. (Lucas Dep. at 53-54.)

3

five points incurred as a result of Plaintiff's absence on March 4, 2011, had been excused but that Plaintiff still had seventy five total points as of March 23, 2011.  (Id.)

On April 8, 2011, Plaintiff was issued a third Report, which indicates that she had been allotted twenty five points for an absence on April 7, 2011.  (Id. at 45.)  Plaintiff's disciplinary action was designated as a written warning, and the Report contains a handwritten note that states that this was Plaintiff's "first and final" written warning.  (Id.)  The Report also indicates that Plaintiff had been allotted a total of one hundred points, but does not contain a recommendation for termination as the County's Absenteeism Policy would appear to require.  (Id.)

Plaintiff and County EEO Officer Beverly Jackson met on April 19, 2011.  (Def.'s Stmt. ¶ 36, 46.)  Plaintiff testified that they discussed the FMLA, the "points system," and the process of filing a grievance.  (Medley Dep. at 40-41.)  Plaintiff claims that Jackson explained that Plaintiff could file a grievance to contest her "points" for unscheduled absences, but that "it is not going to change the policy [and] [i]t is not going to change that fact that [Plaintiff] didn't call out within the two hours and that is the rule."  (Id. at 42.)  Plaintiff testified that she wanted to file a grievance, and that Jackson agreed to provide and explain the appropriate paperwork and procedures sometime during the following week.  (Id. at 48.)  Plaintiff was fired the next day, April 20, 2011.  (Id.)

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the case under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In evaluating the evidence, we take the facts "in the light most favorable" to the nonmoving party and "draw all reasonable inferences" in her favor. Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citation omitted), aff'd 29 F. App'x 100 (3d Cir. 2002). Indeed, evidence introduced to defeat or support

a motion for summary judgment must be capable of being admissible at trial. Callahan v. AEV, Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993)).

## III. DISCUSSION

The County argues that Plaintiff's FMLA discrimination claim fails as a matter of law because Plaintiff was not entitled to take FMLA leave on the days that she was absent from work, she failed to comply with the two hour notice requirement when she attempted to invoke her FMLA leave, and there were no "exigent circumstances" which would have excused her failure to give two hours' notice under the County's absenteeism policy. (Def.'s Mem. at 6.)

The FMLA entitles an employee to take up to twelve work weeks of unpaid leave per year in order to, *inter alia*, "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). It is unlawful under the FMLA "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). The Department of Labor has promulgated regulations that forbid employers from terminating employees "for having exercised or attempted to exercise FMLA rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301 (3d Cir. 2012) (quoting 29 C.F.R. 825.220(c)). To assert a prima facie discrimination claim under the FMLA, a plaintiff must show that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein, 691 F.3d at 302 (citing Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508-09 (3d Cir. 2009)).

Claims based on circumstantial evidence are analyzed "under the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Id. Consequently, if Plaintiff is able to establish a prima facie case, the burden shifts to the County to "articulate some legitimate, nondiscriminatory reason for its decision." Id. (citing McDonnell Douglas, 411 U.S. at 802). If the County "meets this minimal burden, [Plaintiff] 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [the County's] articulated legitimate reasons." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

The evidence of record establishes that Plaintiff sought intermittent FMLA leave and that such leave was granted by the County.[5] (Pl.'s Ex. C; Pl.'s Ex. H ("[Plaintiff] applied and was approved for Intermittent FMLA, on December 2010, due to her son's many mental health issues.")) The record further establishes that Plaintiff was fired, and that her firing was causally related to her attempts to invoke the intermittent FMLA leave that the County granted. (Pl.'s Ex. H ("Employee is on an approved and well substantiated Intermittent FMLA. . . . On several occasions the employee has called out less than two hours before her shift start and was charged with points solely due to that fact. . . . Management has made a decision to terminate the employment of the employee."); Def.'s Ex. H; Medley Dep. at 17; Jackson Dep. at 34-36; Samuels Dep. at 15-16, 23-25.) We conclude, accordingly, that Plaintiff has established a prima facie case of FMLA discrimination.

---

[5] The record evidence contains some dispute over whether Plaintiff was taking leave pursuant to the County's "Compassionate Care" policy, or pursuant to the FMLA. However, the County's argument for the purposes of this Motion proceeds under the contention that Plaintiff has not established a violation of the FMLA. (Def.'s Mem. at 2.)

The County argues, however, that it had legitimate, nondiscriminatory reasons for firing Plaintiff, because she failed to comply with its notice requirements for using her intermittent FMLA leave and thus accumulated so many absenteeism points that she self-terminated under its Absenteeism Policy. Further, the County argues that there were no unusual circumstances that could excuse Plaintiff's failure to comply with its Absenteeism Policy, because Plaintiff had resources to help care for her son, and because Plaintiff only took unscheduled time off adjacent to scheduled time off.

The FMLA provides that, where an employee's need to use her FMLA leave is based on foreseeable medical treatment, she must give at least thirty days' notice to her employer. 29 U.S.C. § 2612(e)(2)(B). However, where the need for leave is not foreseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). This notice requirement for unforeseeable leave requires that:

> **an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.** For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. **If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.**

29 C.F.R. § 825.303(c) (emphases added). The regulations also provide that "[i]f an employer does not waive the employee's obligations under its internal leave rules, the employer may take

8

appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances" provided that this discipline does not discriminate against employees taking FMLA leave and is not inconsistent with § 825.303(a). Id. § 825.304(e). "Unusual circumstances" are not defined by the FMLA or the accompanying regulations, see Verges v. Honda Mfg. of Alabama, LLC, Civ. A. No. 11-1261, 2012 WL 3260367, at *3 n.2 (N.D. Ala. Aug. 8, 2012), and whether a plaintiff has demonstrated "unusual circumstances" is a question of fact. Millea v. Metro-North R. Co., 658 F.3d 154, 162 (2d Cir. 2011).

There is evidence in the record that Plaintiff failed to notify her employer of her absences at least two hours prior to the beginning of her shifts on January 27, 2011, February 1, 2011, March 1, 2011, and April 7, 2011, incurring twenty five absenteeism points on each occasion. (Def.'s Ex. H at 45.) The County argues that Plaintiff's circumstances were not "unusual," which would excuse her lack of notice on those days, because Plaintiff had other resources available to care for her son. Anthony grew up with Plaintiff and her partner, Antoinette, who also shares equally in Anthony's care. (Medley Dep. at 15, 32; Jackson Dep. at 19.) On days that Plaintiff called off, Antoinette was home and available to care for Anthony. (Medley Dep. at 32.) Plaintiff testified that her sister, a stay at home mom, could watch Anthony if both Plaintiff and Antoinette were unavailable. (Id. at 24.) The County also argues that Plaintiff admitted, in her Complaint, that she could "have modified her conduct and dealt with her son's condition, other than taking leave, if she had known that her employer would count as adverse incidents her intermittent taking of leave." (Compl. ¶ 29.) We conclude that the County has met

9

its "minimal burden" of articulating a legitimate, nondiscriminatory reason for firing Plaintiff. Lichtenstein, 691 F.3d at 302.

Plaintiff argues that the County's articulated reason for terminating her is pretextual and that there is evidence in the record from which a jury could find that her circumstances on the days that she failed to comply with the County's notice requirements when invoking her intermittent FMLA leave were unusual, and thus excuse her failure to comply with those requirements. Plaintiff relies on evidence in the record that she was the only individual who could care for Anthony when he was experiencing an anxiety attack, and that the days on which she failed to comply with the County's notice requirement were all occasions when she took FMLA leave because Anthony was experiencing an anxiety attack.

In November 2010, Anthony began missing school after his school bus slid on some ice, which made him afraid to go outside when the weather was "gloomy" or it looked like it was going to snow. (Medley Dep. at 29.) On February 3, 2011, Anthony's medical provider certified that:

> Anthony is experiencing panic attacks inclusive of crying, hiding in closet, covering ears to block out stimuli, verbalizing concern his mother will die, clinging to her. Ms. Medley needs to comfort and reassure Anthony to reduce panic symptoms. He is unable to do this on his own.

(Pl.'s Ex. C at 3.) His doctor further certified that these episodes occur "1-2 times" per week, and last "up to 3 hours" per episode. (Id. at 4.) In April 2011, Anthony began having anxiety attacks in which he would lock himself in a closet, hit and scratch himself, refuse to talk, and attempt to hurt himself. (Medley Dep. at 19.) A serious anxiety attack also occurred in April that kept Anthony up all night and caused Plaintiff to incur another unscheduled absence. (Id. at 39-40.) According to Plaintiff, Anthony goes to his "safe room" when he experiences a panic

attack, and his condition worsens if Plaintiff tries to leave. (Medley Aff. ¶ 4.) Plaintiff maintains that no one else could care for Anthony in these circumstances.

Moreover, when Plaintiff was employed by the County, she worked the 7:00 a.m. to 3:00 p.m. shift, and was not able to call out two hours before invoking her FMLA leave on those occasions because Anthony did not always begin to suffer from anxiety attacks two hours before her shift started. (Medley Dep. at 25, 32.) "The reason [she] was calling out at like 6 o'clock was because [Anthony] was spazzing out. [She] couldn't call out at 5:00 a.m. if he was spazzing at 6:00." (Id. at 32.) According to Plaintiff, Anthony was experiencing episodes that she "had never seen before," in that they would last "all day." (Id. at 34.) Even if Antoinette were home when Anthony was having one of these episodes, "[i]t wouldn't have mattered. If he is explosive and he is having his meltdown for whatever time, he just wants [Plaintiff]." (Id. at 25.) Plaintiff also testified that although her sister occasionally watched Anthony, he is only sometimes "okay" under her care. (Id.) Insofar as the County relies on the allegation in the Complaint, there is evidence in the record that, although Plaintiff "ultimately could have found a solution to Anthony's situation in the longer term" while she worked for the County, she "had not found a solution and [her] son needed [her] in the short term because he responded at that time only to [her] calming him." (Medley Aff. ¶ 14.)

The County also argues that Plaintiff cannot demonstrate "unusual circumstances" because the record shows that Plaintiff's unscheduled absences were taken adjacent to scheduled time off to provide herself with additional leave. It seems that the County's argument is that Plaintiff's care of her son did not qualify as "unusual circumstances" because she did not have to miss work to care for Anthony, and only called out of work when it was convenient for her, that

11

is, when it would maximize her time off work.  The County points to the "Anecdotal Note" issued on March 23, 2011, which indicates that "all call outs for ILOA/concerns with son are all connected to fringe time/time off.  There are no isolated incidents." (Def.'s Ex. H at 44.)  Lucas testified that the note referred to Samuel's belief that all of Plaintiff's unscheduled call outs were taken on the day before or after a holiday, personal day, or vacation day.  (Lucas Dep. at 56-57.)  However, Lucas was unable to identify any specific dates on which Plaintiff missed work that were adjacent to scheduled time off, (see id. at 57), and Samuels agreed that she had "no reason to dispute" that Plaintiff's absences on March 1, 2011, and April 7, 2011, were caused by incidents "involving [Plaintiff's] son" (Samuels Dep. at 22).

Viewing the evidence of record in the light most favorable to the Plaintiff, we conclude that Plaintiff has responded to the County's articulated reason for her firing by pointing to record evidence on which a reasonable juror could disbelieve the County's articulated reason.  This evidence is sufficient to establish that she could not comply with the County's notice policy when her son was having an anxiety attack and that there was no one else who could care for Anthony when he suffered an anxiety attack.  Thus, there is evidence in the record to create a genuine dispute of material fact as to whether Plaintiff had "unusual circumstances" such that she could not "comply with [the County's] usual notice and procedural requirements for requesting leave" on those occasions that she was assessed absenteeism points.  29 C.F.R. § 825.303(c).  We further conclude that there is a genuine dispute of material fact with respect to whether Plaintiff was fired in violation of the FMLA, and the County's Motion for Summary Judgment is, accordingly, denied.

## IV. CONCLUSION

For the reasons stated above, we deny the County's Motion for Summary Judgment. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.